WARREN DAVIS *v.* H. F. KRIGER.

1. ELECTION.  *Infant.*  *Condition.*  *Time for election.*

   Under a bequest to an infant, to be paid him at majority upon condition
   that he will give up certain land owned by him, no time being pre-
   scribed within which he is to elect, he is entitled to a reasonable time
   after coming of age to make his election.

2. ESTOPPEL.  *Taking in ignorance of facts.*  *Restoring status.*

   In such case, where the land is afterwards sold to satisfy an outstanding
   incumbrance, the receipt by the legatee of the surplus proceeds of sale,
   though two years after majority, will not estop him from claiming the
   legacy, if at the time of the receipt he was ignorant of the provisions of
   the will, and within a few weeks thereafter, upon ascertaining the facts,
   filed a bill offering to refund and seeking to take under the will.

FROM the chancery court of Washington county.

HON. W. A. TRIGG, Chancellor.

The appellant, Davis, was the son of Nellie Kanatzer by
her first marriage.  On the seventh day of October, 1882, he
being then a minor about sixteen years of age, his mother
conveyed to him a plantation in Washington county known
as Wildwood, owned by her but upon which she owed a con-
siderable sum of money secured by a vendor's lien.  After-
wards, on December 5, 1882, his mother made a codicil to her
will previously executed, wherein she referred to the convey-
ance of said plantation and recited as follows: "Said tract of
land I have heretofore conveyed to my son Warren Davis.
This action on my part was hasty and unadvised, and it being
my desire to undo the same as far as it is in my power, and I
desire that my son Warren Davis will give up his interest so
acquired in this tract of land and take $1,500 in lieu thereof;
and, if he so elect, I hereby bequeath and devise to him the
sum of $1,500, to be paid to him upon his attaining the age
of twenty-one years, to be paid out of any property of which
I may die seized and possessed; and to that sum of money
there shall be added the sum of eight per cent. per annum
from the date of my death."

. On February 1, 1883, the mother of appellant died. He became of age in April, 1887. Two years after that he was informed for the first time that the chancery clerk had about $169 of his mother's estate which he could get, and he took the same, not knowing at the time, as he alleges, that his mother had executed a will, or the source from which the money was derived. The plantation, Wildwood, had been sold under a decree of the chancery court to satisfy the lien thereon, and, after paying the indebtedness, this $169 was a surplus which was paid to appellant. About the same time he received from H. F. Kriger, administrator, $202, his share of his mother's personal estate. On October 1, 1889, he filed the bill in this case against the administrator of his mother's estate and her other children, alleging, in substance, the above facts, and averring that he had received the sums of money stated in ignorance of his rights, and that he had, only a few weeks before the filing of the bill, ascertained the fact that the testamentary provision had been made in his favor. The bill alleges that no guardian had ever been appointed for complainant; that he did not know his rights when he received the sums of money above stated, or that he was entitled to an election; and that the rights of no third parties had intervened. He offered to pay back the sums of money received by him, and claimed the right to take from his mother's estate the $1,500, and interest thereon from the date of his mother's death to the time of his majority.

To this bill the defendant demurred, upon the ground that it showed no equity, and that if complainant ever had any right of election he had by his conduct lost it. From a decree sustaining the demurrer and dismissing the bill, this appeal was prosecuted. The other facts necessary to an understanding of the case are stated in the opinion of the court.

*Jayne & Watson*, for appellant.

The doctrine of election is founded on the principle that there is an implied condition that he who accepts a benefit

under an instrument must adopt the whole of it. *Noyes* v. *Mordaunt*, Vern., 585; *Streatfield* v. *Streatfield*, Cas. Temp. Talb., 176. If *A* by will or deed gives to *B* property belonging to *C*, and, by the same instrument, gives other property belonging to himself to *C*, a court of equity will hold *C* to be entitled to the gift only upon condition of renouncing his own property. This is the usual illustration. By substituting the names of the parties in the will at issue, it will be seen that this case fits the definition. The legatee under the will, who must elect, is preferred to that extent. Mere inequality of legacies received by the other legatees cannot be considered. The intention of the donor in this case is too manifest to necessitate the test suggested in *Birmingham* v. *Kirwin*, 2 S. & L., *452. There can be no other implication than that the Wildwood plantation should become the property of the other heirs, and the $1,500 the property of Davis. Complainant did not prove a refractory donee. The rule in reference to compensation has no application. The value of Wildwood, deducting the incumbrances, was less than the legacy of $1,500. The case comes within the rule stated in the notes to *Gretton* v. *Howard*, Swanston, 433, and *Bristow* v. *Ward*, 1 Ves., Jr.

The fact that the land was sold to satisfy the vendor's lien could not operate to cut off complainant's right of election. There was $169 left in the hands of the court for the benefit of the estate, as the proceeds of the sale of Wildwood.

Complainant is entitled to have necessary accounts taken, so that he may be informed of the value and condition of the property and enabled to exercise his right of election. 1 Pomeroy's Eq. Jur., § 519; 1 Ves., 171; 1 Ves., Jr., 171; 3 P. Wm., 315.

The questions in this case are: (1) Did the acceptance of the money operate as an election? (2) Had the right of election become barred by limitation? We answer both in the negative. An election is determined by matter *in pais* only on plain and unequivocal facts with a full knowledge of the

circumstances and the party's right.   Bare acquiescence will
not suffice.   2 Yeates, 302; 17 Serg. & Rawle, 16; 3 *Ib.*, 393;
1 *Ib.*, 165; 2 Dessausure, 295; 4 *Ib.*, 274; *Pinkney* v. *Pinkney*,
2 Rich. Eq.; 2 Hen. & Mun., 381; 6 Am. & Eng. Enc. L.,
254; 67 Ga., 61; 1 Pom. Eq. Jur., 315; 2 McCord's Ch.,
269; 2 Johnson Ch., 448; *Akin* v. *Kellog*, 39 Hun. (N. Y.);
*Leonard* v. *Crommelin*, 1 Edward, 206.

The court should have referred the matter to a master to
ascertain what was proper for the protection of the rights of
the infant.   *Addison* v. *Bowie*, 2 Bland, 606; Swans., 409; 1
Pomeroy's Eq. Jur., § 509; 6 Am. & Eng. Enc. L., 253, note
4, and cases there cited.   To sustain an inference of an elec-
tion, it must appear that the party knew of his right to elect,
and not merely of the instrument giving such right.   30
Beavan, 235; 20 *Ib.*, 67.

The fact that complainant Davis received a part of his
mother's estate and the $216 without being called upon by
the other party in interest to elect, indicates no intention
of taking one and relinquishing the other.   1 Pom. Eq. Jur.,
§ 515; 2 M. & G., 298; *Whitridge* v. *Parkhurst*, 20 Md., 62.

*Yerger & Percy*, for appellee.

The theory of the bill is that appellant was given the right
to elect between Wildwood and the $1,500; that as the plan-
tation has been sold, only $169 remaining of the proceeds
after paying prior incumbrances, he is entitled to elect be-
tween the $1,500 and the $169.   We contend that he lost his
right of election when Wildwood was sold; and if this is
not true, that he exercised his right of election by accepting
the $169.   While the authorities hold that the party must be
advised of his rights at the time of making his election, it is
also held that where he has had an opportunity to make such
an examination as will enable him to learn the truth, he is
bound by an election thereafter made.   1 Pomeroy's Eq.
Jur., § 512.

Equity will not lend its assistance to one who has been

guilty of laches. Where there has been no attempt to defraud or mislead, a person is chargeable with such knowledge as he could have acquired by the exercise of reasonable diligence. In this case the will and codicil had been probated and recorded, and two years after his majority appellant received the money. Is it credible that he should have received it without inquiry as to the source? If guilty of such inexcusable negligence, does such conduct commend him to a court of equity?

Counsel has been misled by the mere use of the word election in the will. The doctrine of election cannot apply to a choice between two sums of money. There must be a clear intention on the part of the donor to dispose of property not his own. 1 Pomeroy's Eq. Jur., § 472.

Under this will there could never be any necessity for the interposition of the court. If appellant took under the will, he conveyed to the estate the plantation; if he took against the will, he retained the plantation. Suppose the place had never been sold, and that appellant had elected to retain it, could it be contended that in case the court considered the property worth less than $1,500 he would have been entitled to the difference between its value and the $1,500? On the contrary, it is clear that his right to any portion of the $1,500 would only have arisen upon the entire relinquishment of his title to the plantation. Appellant seems to think that this being a case of election, he will have to renounce the $169 in order to claim the $1,500. He is not aware that under the law governing election he could retain the $169, and claim so much of the bequest as was necessary to make the total received by him $1,500. It is this absurd result that the doctrine of election works out, when applied to a case for which it was never intended, that possibly prevented complainant from asserting the full measure of his rights according to his theory of them.

The codicil simply made a bequest of $1,500 to complainant upon condition that he would relinquish his title to Wild-

wood. It was a condition precedent; and when that condition became impossible of performance by the sale of the plantation, the bequest failed. It failed as completely as if the place had been swallowed up by an earthquake.

CAMPBELL, C. J., delivered the opinion of the court.

The codicil contains a bequest to the appellant of fifteen hundred dollars and interest at eight per cent. from the death of the testatrix, to be paid to him upon his attaining the age of twenty-one years, upon condition that he should "give up his interest" in a tract of land previously conveyed to him by the testatrix. To "give up his interest" in the land was made a condition precedent to his taking the legacy. The right to choose or "elect" was conferred upon him. He might release all claim on the land under the conveyance to him, and be thereby entitled to the fifteen hundred dollars and interest, or claim under the conveyance and preclude any claim to the legacy. No time was prescribed within which he was to signify his election; but, as he could not convey his interest in the land during his infancy and the legacy was not payable to him until he became twenty-one years of age, he was entitled to a reasonable time after this in which to comply with the condition on which he was to be entitled to the legacy.

The bill avers that the appellant, but a very short time before its exhibition, learned of the existence of the will and its provision for him, and that in ignorance of it he had received a sum of money which arose from the sale of the land that had been conveyed to him by his mother, the testatrix, without knowing that the money so received was of the proceeds of the sale of the land.

The bill shows a case of ignorance as to the party's rights sufficient to relieve against the consequence of his receipt of the money as an estoppel to claim the legacy if he is otherwise entitled to it.

It seems that at the time of the death of the testatrix the

land she had conveyed to the appellant, and for a release of claim to which she had offered him the legacy mentioned, was subject to a charge for unpaid purchase-money, and that after her death a suit (begun in her life-time) in the chancery court to enforce this claim resulted in a decree for the sale of the land, and it was sold accordingly and brought a sum in excess of the sum due under the decree, which excess was subsequently paid to the appellant, who received it as stated above.   Did the fact that the land was thus dealt with defeat the right of the appellant to the legacy by making it impossible for him to comply with the condition precedent on which his right to the legacy was made to depend?   Or may he now " give up his interest " in the land and claim the legacy ?

The testatrix intended that the appellant should have $1,500 if he would renounce claim to the land, whereby it would become part of her estate and go by her will, which disposed of all of her estate.   She had given him the land, and, repenting of it, sought to undo it and substitute for that gift the legacy, if he would choose it instead of the land. The subsequent devotion of the land to the payment of a charge upon it, existing in the life-time of the testatrix and presumably her debt, of which she was fully cognizant when she executed the codicil, did not defeat the right of the appellant to choose between the land and the legacy.   The land went to pay the debt of the testatrix, and thus exonerated her estate.

The appellant is certainly entitled to some relief upon the facts stated in his bill.   We will not now undertake to determine the precise measure of his rights, but hold that the bill should be answered.

*Decree reversed, demurrer overruled, leave to answer in thirty days after mandate filed below, and cause remanded.*